IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMES S., | CV 22-167-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| MARTIN O'MALLEY, Commissioner of Social Security,[1] | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.

## I.   __Procedural Background__

Plaintiff protectively filed an application for Title II disability insurance benefits on March 11, 2019, alleging disability since April 30, 2015, based on physical and mental impairments. (Doc. 8, at 18, 46, 178-79). Plaintiff was last insured for disability benefits on December 31, 2015, which means he must

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Commissioner of Social Security, is automatically substituted as the defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security.

establish disability on or before that date to qualify for disability benefits. (Doc. 8 at 18-19, 185).

Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 8 at 15-36, 74, 90). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision dated May 3, 2022, the agency's final decision for purposes of judicial review. (Doc. 8 at 6-11). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d

1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.     Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The

claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment

of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   Discussion

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found Plaintiff last met the insured status requirement of the Social Security Act on December 31, 2015. (Doc. 8 at 20). The ALJ further found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of April 30, 2015 through his date last insured. (Doc. 8 at 20). At step two, the ALJ found that Plaintiff had the following severe

impairments: osteoarthritis ankles, degenerative disc disease of the lumbar spine, depression, anxiety, and post-traumatic stress disorder (PTSD). (Doc. 8 at 20). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 8 at 21).

The ALJ then found that Plaintiff had the residual functional capacity to perform a range of light work as follows:

> The claimant can lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally; can walk and stand about 6 hours in an 8 hour workday with normal work breaks; can sit about 6 hours in an 8 hour workday with normal work breaks; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally climb ladders, ropes and scaffolds; needs to avoid concentrated exposure to extreme cold and hazards. Normal breaks are defined as occurring every 2 hours with 2 breaks, lasting at least 10 minutes and one break lasting at least 30 minutes. He can understand, remember, and carry out simple, detailed, and complex tasks; can maintain attention concentration, persistence and pace for only simple tasks for 8 hour workdays and 40 hour work weeks; can tolerate occasional interaction with supervisors, coworkers and the public; cannot work in tandem with supervisors or coworkers and should not work directly with the public as part of work duties; can tolerate usual work situations; can tolerate occasional changes in routine work settings; all limitations are considered sustained work activities in an ordinary work setting on regular and continuing basis unless otherwise specified.

(Doc. 8 at 24). At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. (Doc. 8 at 29). At step five,

the ALJ found based on the vocational expert's testimony that other jobs exist in significant numbers in the national economy that Plaintiff could perform, including work as a routing clerk, merchandise marketer, and mail clerk. (Doc. 8 at 30).

Plaintiff argues the ALJ's decision is not supported by substantial evidence, and raises three main issues on appeal. First, Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting his subjective testimony. Second, Plaintiff contends the ALJ improperly assessed two lay witness statements. Third, Plaintiff argues the ALJ failed to properly evaluate the medical evidence and, as a result, the residual functional capacity assessment does not adequately account for all of his physical and mental limitations.

### A.     Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting his subjective testimony as to the severity of his symptoms and limitations. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the

severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

This standard requires the ALJ to "show [her] work" by providing a "rationale … clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)). In addition, the court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492. This means the court "may not take a general finding" by the ALJ "and comb the administrative record to find specific" evidence in support of that finding. *Brown-Hunter*, 806 F.3d at 494. Rather, the ALJ is responsible for identifying the testimony she finds not credible, and linking that testimony to the particular parts of the record supporting her determination. *Brown-Hunter*, 806 F.3d at 494.

Here, the ALJ found that Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably

be expected to cause the alleged symptoms. Accordingly, and because there is no evidence of malingering, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms.

Plaintiff is a veteran of the Gulf War Era who has received a Veterans Administration disability rating of 100 percent for PTSD, and partial disability ratings for various physical impairments. (Doc. 8 at 168-69). At his administrative hearing with the ALJ, Plaintiff testified primarily to his mental symptoms and limitations. (Doc. 8 at 47-58). He explained that he was last employed by a forest products company owned by a fellow veteran, and worked in the company warehouse selling lumber from a mill. (Doc. 8 at 50). Plaintiff testified that he was very easily distracted on the job; experienced hypervigilance that made it difficult for him to stay on task; and had panic and anxiety attacks multiple times a day that he dealt with by pacing around outside and calling friends to talk him down. (Doc. 8 at 51). Plaintiff stated that he would have to leave work early due to these symptoms two to three times per month, and while the owner who hired him tolerated this, the subsequent owner did not understand what he was going through and the two of them did not get along. (Doc. 8 at 52). Plaintiff testified that the two of them constantly bickered and "blew up" at each other, and he was eventually given the option to quit or be fired, so he quit. (Doc. 8 at 52-53).

Plaintiff explained that he had not worked since because he has "a really hard time with people and I don't …know how to approach it." (Doc. 8 at 53). Plaintiff stated that dealing with people like his most recent boss would get his "blood pressure pumping" and throw him into "anxiety fits" and he did not know how to find another with a supervisor who would understand his situation. (Doc. 8 at 53). Plaintiff described having "on and off girlfriends," and testified that he mainly drank alcohol when socializing in group settings in order to deal with his hypervigilance and anxiety. (Doc. 8 at 53, 55). Plaintiff testified that he ended a relationship with his girlfriend in 2015 because his finances were bad and his social problems were hard on the relationship. (Doc. 8 at 55-56). Focusing on the period between 2014 and 2015, Plaintiff described spending four to five hours per week with his parents, seeing his teenage daughter every other weekend and for two weeks at a time when she was not in school, and speaking with military friends over the phone. (Doc. 8 at 56-57). Plaintiff testified that he lost "lots" of friends after his military service because he would "blow up on people and people don't like that. So they stop talking to me." (Doc. 8 at 57). Plaintiff explained that he feels safest in his home "or out in the woods away from everybody," and asserted his is disabled "[b]ecause of panic and anxiety and physical limitations and injuries and terrible people, skills, [and] disorganization." (Doc. 8 at 58).

Although Plaintiff stated generally that his physical limitations prevented him from working, he did not testify as to the symptoms caused by his physical impairments. (Doc. 8 at 47-58). Plaintiff did, however, complete a Function Report -Adult indicating that he has difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, seeing, remembering, completing tasks, concentrating, understanding, following instructions, using his hands, and getting along with others. (Doc. 8 at 278).

The ALJ summarized Plaintiff's testimony, and found that "the claimant's medically determinable impairments could reasonably be expected to cause the allege symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 8 at 25).  Plaintiff argues this statement is not a clear and convincing reason for rejecting his testimony, and contends the ALJ merely summarized the medical records without providing any additional reasons to support her adverse credibility determination.

Plaintiff is correct that the ALJ's opening "boilerplate statement" is not, by itself, a clear and convincing reason for discounting Plaintiff's symptom testimony because it does not "identify what part of [Plaintiff's] testimony were not credible and why." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*

11

*v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

However, contrary to the rest of Plaintiff's argument, the ALJ did more than just

summarize the medical evidence and did not rely solely on this boilerplate

language to discount Plaintiff's testimony. Instead, the ALJ provided specific, clear

and convincing reasons for discounting Plaintiff's symptom testimony.

First, to the extent Plaintiff asserted he was unable to work due to physical

limitations and impairments, including particularly back, shoulder, and ankle

impairments (Doc. 8 at 252), the ALJ pointed to mild lumbar spine imaging results

and mostly normal routine physical examination findings. (Doc. 8 at 26). For

example, the ALJ noted that in November 2014, updated magnetic resonance

imaging (MRI) of Plaintiff's lumbar spine revealed what neurologist Richard A.A.

Day described as "mild abnormalities." (Doc. 8 at 26, citing Doc. 8 at 1164-65).

Dr. Day did "not recommend surgery at this time," and advised Plaintiff that his

"rather significant hamstring and gluteal rigidity" might "further benefit from

dedicated stretching, a yoga program and some weight loss." (Doc. 8 at 26, citing

Doc. 8 at 1164). The ALJ also noted that Plaintiff had been prescribed orthotic

shoes in March 2014 as a result of osteoarthritis in his right ankle, but had

otherwise had minimal treatment with regard to ankle pain. (Doc. 8 at 26, citing

Doc. 8 at 1201). *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007)

("evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment").

The ALJ recognized that physical examinations at times showed some abnormalities, including a minor strength deficit in Plaintiff's right quadricep, tight hamstrings and gluteals, and a mildly antalgic gait, but found that on the whole, the physical examination findings showed Plaintiff was not in acute distress; had no focal neurological, sensory, strength or motor deficits; had normal range of motion without pain, negative straight leg raise, and no instability; and walked with a normal gait. (Doc. 8 at 26, citing e.g. Doc. 8 at 861, 987, 1172, 1196-97, 1201). While the ALJ's findings are relatively cursory, they nonetheless support the ALJ's reasoning that if Plaintiff's physical impairments were as limiting as alleged, even such routine medical examination findings would consistently reflect more significant abnormalities. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Second, turning the Plaintiff's alleged mental limitations during the relevant period, the ALJ found that although Plaintiff at times presented as anxious, and reported that he was irritable, did not really want to be around people,

and struggled with focus and concentration, his medical records did "not suggest that he was having significant panic or anxiety attacks as he testified." (Doc. 8 at 27). Although Plaintiff takes issue with this statement, he does not point to any specific medical record documenting the daily panic or anxiety attacks described by Plaintiff. Additionally, although VA records reflect that Plaintiff participated in many PTSD treatment sessions between November 2014 and March 2022, there does not appear to be any mention of the daily panic and anxiety attacks to which Plaintiff testified. (Doc. 8 at 1114, 1116, 1130, 1132-1134, 1136-1145, 1147-1154, 1231-1238, 1243-1250, 1255-1263, 1267-1286, 1288-1302).

The ALJ further found that Plaintiff's "[e]xamination findings also did not suggest mental health symptoms at the level he testified" to, and instead "revealed that he was not in acute distress, interacted appropriately, and had good concentration and attention, intact memory, and normal thought processes." (Doc. 8 at 27). The ALJ supported this statement with a reference to mental status findings made during four physical examinations 2014 and 2015.  Specifically, in January 2014, a primary care provider at the Marcus Daily Memorial Hospital and Clinics indicated that Plaintiff was "[c]ooperative, [a]ppropriate mood & affect." (Doc. 8 at 1172). Several months later, in July 2014, a provider at the VA medical center noted during a follow up visit for Plaintiff's back pain that his mental status was within normal limits. (Doc. 8 at 1197). In early May 2015, physical

examination findings by a provider at the Montana Spine and Pain Center indicated during one visit that Plaintiff was "alert and cooperative with normal attention, mood affect," was oriented, and was "a good historian with clear speech and fluent language" (Doc. 8 at 987). During a second visit a few weeks later, the same provider indicated that Plaintiff "was in no acute distress," and "was alert and cooperative with normal attention, mood and affect." (Doc. 8 at 984-85). The ALJ also cited the mental status examination findings of VA psychologist Dr. Robert Bateen, who evaluated Plaintiff in January 2015. (Doc. 8 at 26, citing Doc. 8 at 736-37). Dr. Bateen similarly found that Plaintiff maintained good eye contact, was alert and oriented, was articulate, expressed himself well, and appeared to be of average intelligence. (Doc. 8 at 736). The ALJ reasonably found that these mental status findings, which were made during the 2014-2015 time period Plaintiff was asked to focus on when testifying, were not consistent with his testimony as to the daily severity of his PTSD-related symptoms.

Plaintiff contends the ALJ overlooks VA records documenting his treatment for PTSD, which Plaintiff claims substantiate his PTSD-related symptom testimony. The record reflects that Plaintiff first sought VA treatment for PTSD in November 2014. (Doc. 8 at 1153-54). Between November 2014 and March 2022, Plaintiff participated in more than 30 individual and group treatment sessions with VA mental health professionals. (Doc. 8 at 1114, 1116, 1130, 1132-1134, 1136-

1145, 1147-1154, 1231-1238, 1243-1250, 1255-1263, 1267-1286, 1288-1302).

These records document that Plaintiff experienced multiple PTSD-related

symptoms during this period, including difficulties with "[i]solation, heightened

startle response, irritability with severe outbursts of anger, difficulty with

concentration, markedly impaired social and occupational functioning" (Doc. 8 at

1136, 1140-1142); depression and isolation (Doc. 8 at 1144-1145); and suicidal

thoughts (Doc. 8 at 1130, 1153-1154). Additionally, from July 2018 to September

2018, Plaintiff participated in a PTSD residential treatment program in Cincinnati,

Ohio. (Doc. 8 at 414-416, 426-664).

    As the Commissioner points out in response, however, most of these VA

records significantly post-date the expiration of Plaintiff's insured status in

December 2015. Of the many VA treatment sessions Plaintiff points to, only a

handful took place before December 31, 2015. (Doc. 8 at 1145-1153). The vast

majority of these sessions occurred in 2016, 2017, 2021, and 2022, and the

inpatient treatment program Plaintiff participated in took place nearly three years

after Plaintiff's date last insured.

    The fact that medical evidence post-dates the expiration of a plaintiff's

insured status does not necessarily render the evidence irrelevant. *See Smith v.*

*Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). But it remains Plaintiff's burden to

establish that his impairments were disabling on or before his date last insured and

for 12 months thereafter. The ALJ reasonably found the fact that Plaintiff "had very little treatment" (Doc. 8 at 27) for PTSD before his insured status expired undercut his testimony as to the severity of his symptoms during that period. The ALJ was not required to further address Plaintiff's VA records when assessing his mental symptom testimony, which focused on his symptoms in 2014 and 2015.

Finally, the ALJ discounted Plaintiff's testimony because "his reported activities also do not support limitations at the level he suggests." (Doc. 8 at 27). An ALJ may discount a claimant's testimony based on daily activities that either contradict his testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ found that "[a]round the period at issue, [Plaintiff] reported that he could perform all activities of daily living independently. He attended appointments by himself, was in contact with friends and went camping and hunting with them, as well as out to bars to play pool." (Doc. 8, at 26 citing Doc. 8 at 733, 1159). This too was clear convincing reason for discounting Plaintiff's testimony. At his hearing, Plaintiff testified that in 2014 and 2015, he did not really spend time with friends, and "talk[ed] to friends on the phone more than anything." (Doc. 8 at 57). Plaintiff explained that a lot of his friends had stopped talking to him because he would often "blow up" at them, and that he preferred spending time "[a]t home or out in the woods away from everybody." (Doc. 8 at 57). When Plaintiff saw Dr. Bateen in January 2015,

however, he reported "engaged in outdoor activities such as hunting and camping with friends," and occasionally going to a "bar to play pool if the bar is not crowded." (Doc. 8 at 733-34). Even if Plaintiff's other reported activities were consistent with his testimony, the discrepancy between Plaintiff's testimony and his statements to Dr. Bateen regarding his social activities is a clear and convincing reason for rejecting his testimony.

### B.   Lay Witness Statements

Plaintiff next argues the ALJ erred by improperly discounting supportive written statements provided by two of his friends, Delicia Mclean and Sgt. Stephen Damron.

The Ninth Circuit has long held that an ALJ "must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Because "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence, [it] cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing 20 C.F.R. § 404.1513(e)) (emphasis in original). The Ninth Circuit has historically required an ALJ to provide germane reasons for discounting lay witness testimony. *See e.g. Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

For claims filed on or after March 17, 2017, however, the revised Social Security regulations provide that an ALJ is "not required to articulate how [she] considered evidence from nonmedical sources ...." 20 C.F.R. § 404.1520c(d). The Ninth Circuit has "not yet addressed whether under the new regulations an ALJ is still required to provide germane reasons for discounting lay witnesses." *Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) (unpublished). Absent firm guidance from the Ninth Circuit, district courts have either avoided resolving the issue or come to different conclusions on whether an ALJ must continue to provide germane reasons for disregarding lay witness statements. *See Mercedes Dawn C. v. O'Malley*, 2024 WL 404502, at *4 (D. Idaho Feb. 2, 2024 (recognizing that the issue is unsettled in the Ninth Circuit and citing contradictory cases). Even if the "germane reasons" standard does apply, any failure on the ALJ's to meet that standard is harmless if the "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117, 1122.

### 1.   Delicia Mclean

On January 4, 2022, Plaintiff's lifelong friend, Delicia Mclean, wrote a letter in support of his application for disability benefits. (Doc. 8 at 310-11). Mclean's statement describes essentially the same limitations to which Plaintiff testified. For

example, Mclean wrote that Plaintiff had difficulty keeping friends and romantic

relationships, and maintaining gainful employment. She indicated that he had

difficulty focusing at work, and left his job at the lumber warehouse because of

stress, anxiety, and frustration with his manager. She stated that at the time of her

letter, Plaintiff was estranged from his parents, tended to isolate at home, had few

friends, and had trouble interacting with others. (Doc. 8 at 311).

The ALJ addressed Mclean's statement but found it unpersuasive for many

of the same reasons she discounted Plaintiff's testimony. (Doc. 8 at 28-29).

Because the ALJ provided legally sufficient reasons for rejecting Plaintiff's

testimony, it follows that those reasons were also a valid basis for rejecting

Mclean's similar testimony.

### 2.    Sgt. Stephen Damron

Sergeant Stephen Damron served in the military with Plaintiff and submitted

an undated letter in support of Plaintiff's application for disability benefits. (Doc. 8

at 315). Sgt. Damron wrote that after returning home, Plaintiff tried to remain

employed and would call Sgt. Damron several times a day, and Sgt. Damron

"would talk him down from the stress from anxiety attacks and flash backs." (Doc.

8 at 315). Sgt. Damron relayed that Plaintiff described having a great amount of

anxiety around people and struggled with mental health. (Doc. 8 at 315).

The ALJ stated that she had "reviewed and considered" Sgt. Damron's statement, but did not address it any further on the ground that the revised "regulations do not require articulation with regard to the persuasiveness of such opinions." (Doc. 8 at 29). Even assuming the ALJ erred in not addressing Sgt. Damron's statement, the error was harmless because he did not describe any limitations or symptoms beyond those included in Plaintiff's own testimony. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)

### C.    Medical Evidence and Residual Functional Capacity

#### 1.    Physical Exertional Limitations

Plaintiff argues the ALJ erred in assessing his residual functional capacity because he did not include any arm limitations or hearing limitations from tinnitus, and did not evaluate the impact of his obesity on functioning as required by SSR 19-2p. (Doc. 10 at 20-21). To support this argument, Plaintiff simply points out that the Veterans Administration has assigned him a disability rating of 20 percent for limited arm motion and back impairments, and 10 percent for limited ankle motion and tinnitus. (*See e.g.* Doc. 8 at 417). Plaintiff also string cites to a number of treatment notes, but does not identify what specific limitations he believes the ALJ should have included in the residual functional capacity or point to any medical opinion evidence demonstrating that he had additional physical limitations not accounted for by the ALJ. (Doc. 10 at 20-21).

The ALJ's assessment of Plaintiff's exertional limitations is supported by the prior administrative medical findings of the state agency medical consultant, who identified limitations consistent with the ability to perform light work. (Doc. 8 at 75-80). The ALJ relied on this opinion when assessing Plaintiff's residual functional capacity. (Doc. 8 at 27) and there are no medical source opinions identifying additional physical limitations. The ALJ is responsible for weighing the medical opinions in the record and resolving any conflicts in the medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Even if the record could support a different result, the Court must affirm the ALJ's findings if they are supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). Even if the evidence in this case could be subject to more than one rational interpretation, the ALJ's assessment of Plaintiff's exertional limitations is supported by substantial evidence.

### 2.   Mental Non-Exertional Limitations

Finally, Plaintiff argues the ALJ failed to adequately account for the mental limitations identified by Dr. Bateen, who assessed the severity of Plaintiff's mental impairments and limitations in a report dated January 28, 2015. Dr. Bateen confirmed that Plaintiff carried a diagnosis of PTSD, which had "exacerbated"

since his initial examination five years earlier. (Doc. 8 at 737). Dr. Bateen concluded that Plaintiff was "able to maintain brief and superficial contact with others but has difficulty engaging in relationships where intimacy is demanded," and "has a strong work ethic but is having difficulties working at a consistent pace." (Doc. 8 at 737).

The regulations applicable to Plaintiff's claim require the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). Because supportability and consistency are the two most important factors, the ALJ must explain how she considered them in the decision. *Brandee M. v. Saul*, 2021 WL 2781803, at *3 (C.D. Cal. July 1, 2021) (citing 20 C.F.R. §§ 404.1520c, 416.920c). Generally, however, the ALJ is not required to explain how she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2).

The ALJ noted that the non-examining state agency physicians found there was "insufficient evidence" to assess Plaintiff's mental impairments, and so relied on Dr. Bateen's opinion to assess Plaintiff's mental limitations. (Doc. 8 at 27, 76-77, 86-87). The ALJ found Dr. Bateen's opinion persuasive, and agreed the

evidence supported that Plaintiff "would have some problems in social situations, as demonstrated by his presenting anxious and/or withdrawn at times, and also giving consideration to his subjective reports of having some focus and concentration problems due to hypervigilance, which would be consistent with his diagnosis of PTSD." (Doc. 8 at 27-28). The ALJ pointed out that Dr. Bateen's opinion was "somewhat vague with regard to the level of impact the [Plaintiff's] symptoms would have on these activities," however, because he did not "define what is meant by 'brief and superficial' or clearly identify the level or frequency of difficulty [Plaintiff] would have with working at a consistent pace" using defined terms such as mild, moderate, extreme, frequent, occasional, and never. (Doc. 8 at 28). The ALJ therefore found that, considering Plaintiff's "subjective reports along with examination findings, which are normal overall, as well as [Plaintiff's] report of activities at around the time of the period at issue," Plaintiff had no "more than moderate limitations in social functioning and concentration, persistence, and pace." (Doc. 8. at 28).

For purposes of translating these findings into specific functional restrictions, the ALJ found that Plaintiff had the residual functional capacity to "maintain attention, concentration, persistence and pace for only simple tasks" on a full-time basis and could "tolerate occasional interaction with supervisors, coworkers and the public." (Doc. 8 at 24). She further found that Plaintiff could

"not work in tandem with supervisors or coworkers and should not work directly

with the public as part of work duties," was able to "tolerate usual work situations"

and "occasional changes in routine work settings." (Doc. 8 at 24).

Plaintiff argues the limitation to simple tasks does not adequately account

for the moderate limitations in concentration, persistence, and pace identified by

the ALJ when addressing Dr. Bateen's opinion. Plaintiff relies on *Brink v. Comm'r*

*Soc. Sec. Admin.*, 343 Fed.Appx. 211, 212 (9th Cir. 2009) (unpublished), which

held that a limitation to "simple, routine, and repetitive" tasks did not adequately

account for moderate limitations with concentration, persistence, or pace. In *Brink*,

the ALJ accepted medical evidence establishing that the claimant had moderate

limitations with concentration, persistence, or pace, but did not include those

specific limitations in the hypothetical to the vocational expert. *Brink*, 343

Fed.Appx. at 212. Instead, the ALJ stated that the claimant would be restricted to

"simple, repetitive work." *Brink*, 343 Fed.Appx. at 212. The Ninth Circuit held that

the restriction to simple, repetitive work did not adequately capture the claimant's

moderate limitations in concentration, persistence, or pace, reasoning that simple

repetitive work could include assembly-line work requiring "extensive focus or

speed." *Brink*, 343 Fed.Appx. at 212. Thus, the Ninth Circuit held that the ALJ's

hypothetical to the vocational expert should have included both the limitation to

"simple, repetitive work" as well as moderate limitations in concentration, persistence, or pace. *Brink*, 343 Fed.Appx. at 212.

The Commissioner counters, and the Court agrees, that this case is more analogous to the Ninth Circuit's published decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). In *Stubbs-Danielson*, the claimant's physician found that the claimant had "slow pace, both with thinking and her actions" and moderate limitations in others mental areas, but nevertheless concluded the claimant "retained the ability to carry out simple tasks" and follow short simple instructions. *Stubbs-Danielson*, 539 F.3d at 1173. The ALJ translated the physician's findings regarding slow pace and other mental limitations into a restriction limiting the claimant to "simple tasks." *Stubbs-Danielson,* 539 F.3d at 1174. The Ninth Circuit upheld the residual functional capacity assessment, finding that the ALJ "properly incorporated the limitations identified" in the medical opinion evidence, "including those related to pace and other mental limitations regarding attention, concentration, and adaptation." *Stubbs-Danielson*, 539 F.3d at 1174. Under *Stubbs-Danielson*, "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the assessment is consistent with the restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174.

Here, as in *Stubbs-Danielson*, the ALJ properly incorporated Plaintiff's

26

moderate limitations in concentration, persistence, or pace into the residual functional capacity by restricting him to simple tasks. Dr. Bateen's report is the only medical source opinion addressing Plaintiff's mental limitations, and the ALJ's finding that Plaintiff retained the concentration, persistence and pace to perform "simple tasks" is consistent with that report as well as the normal mental status findings discussed above.

Plaintiff next argues that the limitation to "occasional" interaction with others, which is defined to mean "from very little up to one-third" of an 8-hour workday,[2] does not adequately account for the social limitations described in Dr Bateen's opinion, Plaintiff's own testimony, and the lay witness statements. As addressed above, however, the ALJ properly discounted Plaintiff's symptom testimony and the two lay witness statements. Because Dr. Bateen did not specify what he meant by "brief and superficial contact with others," the ALJ reasonably translated that finding to mean "occasional interaction with supervisors, coworkers and the public," not working "in tandem with supervisors or coworkers," and not working "directly with the public." (Doc. 8 at 24).

**IV.** <u>**Conclusion**</u>

---

[2] Social Security Ruling 83-10, 1983 31251, *5.

For the reasons discussed above, the Court finds the ALJ's decision denying Plaintiff's claims for disability insurance benefits and supplemental security is supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 28th day of February, 2024.

_____
Kathleen L. DeSoto
United States Magistrate Judge